**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
Nicholas Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**ABRAMSON LABOR GROUP LLP**
Jack J. Gindi, Esq. (SBN: 293739)
jack@abramsonlabor.com
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
Telephone: (213) 493-6300

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**MALKA L. FISHMAN, Individually and On Behalf of All Others Similarly Situated,**

**Plaintiff,**

**v.**

**SUBWAY FRANCHISEE ADVERTISING FUND TRUST, LTD. d/b/a SUBWAY,**

**Defendant.**

**Case No.:** 2:19-cv-02444-ODW-ASx

**PLAINTIFF'S OPPOSITION TO DEFENDANT SUBWAY FRANCHISEE ADVERTISING FUND TRUST, LTD.'S MOTION TO DISMISS**

**Date:** July 22, 2019
**Time:** 1:30 p.m.
**Crtrm:** 5D

**Judge:** Hon. Otis D. Wright

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**I. INTRODUCTION** ........ 1

**II. THE COMPLAINT SUFFICIENTLY ALLEGES THAT SUBWAY IS LIABLE FOR THE COMMERCIAL TEXT MESSAGES** ........ 1

**A. Direct Liability** ........ 1

**B. Vicarious Liability** ........ 3

**1. Actual Authority** ........ 4

**2. Apparent Authority** ........ 6

**3. Ratification** ........ 7

**III. THERE IS SPECIFIC PERSONAL JURISDICTION OVER SUBWAY IN LIGHT OF ITS USE OF T-MOBILE AS ITS AGENT** ........ 7

**A. Legal Standard Under Fed. R. Civ. P. 12(b)(2)** ........ 9

**B. Specific Personal Jurisdiction May Be Premised on Agency** ........ 10

**1. Subway Purposefully Directed Harmful Acts at California** ........ 12

**a. *Subway committed an intentional act through T-Mobile, its authorized agent*** ........ 12

**b. *Subway and its Agent T-Mobile, expressly aimed their conduct at California agent*** ........ 14

**c. *Subway Caused Harm in the Forum State*** ........ 14

**2. The Claims Arise Out of Subway's Actions in the Forum** ........ 14

**3. Exercising Specific Jurisdiction here is Reasonable and Comports with Notions of Substantial Justice and Fair Play** ........ 16

**IV. PLAINTIFF PLAUSIBLY PLEADS USE OF AN ATDS** ........................ 19

**V. THE LIMITED CARRIER EXEMPTION IS INAPPLICABLE** ........... 5

**VI. CONCLUSION** .......................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) .......... *19*

*American Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781 (9th Cir. 1982) .......... 1

*Armstrong v. Investor's Bus. Daily, Inc*., No. CV 18-2134-MWF (JPRx), 2018 U.S. Dist. LEXIS 216246 (C.D. Cal. Dec. 21, 2018) .......... 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 20, 21

*AT&T* v. *Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) .......... 9

*Augustine v. U.S.*, 704 F.2d 1074 (9th Cir. 1983) .......... 8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) .......... 12

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) .......... 9

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000) .......... 10, 16

*Bliesner v. Commun. Workers of Am.*, 464 F.3d 910 (9th Cir. 2006) .......... 9

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986) .......... 17

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) .......... 23

*Charvat v. Allstate Corp*., 29 F. Supp. 3d 1147 (N.D. Ill. 2014) .......... 4

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) ........ 10

*Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279 (N.D. Cal. July 28, 2016) ........ 23

*Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*, No. CV 10-8736, 2011 U.S. Dist. LEXIS 73376, 2011 WL 2604886 (C.D. Cal. July 1, 2011) ........ 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........ 10

*Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ........ 9

*Delacruz v. Serv. Corp. Int'l*, No. 1:18-cv-00154-LJO-EPG, 2018 U.S. Dist. LEXIS 84172 (E.D. Cal. May 17, 2018) ........ 11

*DeSoto v. Yello Freight System, Inc.*, 957 F.2d 655 (9th Cir. 1992) ........ 25

*Divicino v. Polaris Industries*, 129 F.Sup.2d 425 (D.Conn. 2001) ........ 16

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ........ 14

*Duguid v. Facebook, Inc.*, No. 17-15320, 2019 U.S. App. LEXIS 17675 (9th Cir. June 13, 2019) ........ 21

*Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1990) ........ 14

*Ferrari v. Mercedes Benz USA, LLC*, No. 17-cv-00018-YGR, 2017 U.S. Dist. LEXIS 114271 (N.D. Cal. July 21, 2017) ........ 11

*Flores v. Adir Int'l, LLC*, 685 F.App'x 533 (9th Cir. 2017) ........ 22

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. Pa. 2013) ........ 25

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) ........ 3

*Gonzalez v. Hosopo Corp.*, 371 F. Supp. 3d 26 (D. Mass. April 9, 2019) ........ 22-23

*Havel v. Honda Motor Europe Ltd.*, No. H-13-129, 2014 U.S. Dist. LEXIS 140983 (S.D. Tex. Sep. 30, 2014) ........ 17

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ........ 17

*Heber v. Toyota Motor Sales U.S.A., Inc.*, 2018 U.S. Dist. LEXIS 153073 (C.D. Cal. June 11, 2018) ........ 11

*Heidelberg USA, Inc. v. PM Lithographers, Inc.*, No. CV 17-02223-AB (AJWx), 2017 U.S. Dist. LEXIS 218428 (C.D. Cal. Oct. 19, 2017) ........ 11

*Helicopter Transp. Servs. v. Sikorsky Aircraft Corp.*, 253 F. Supp. 3d 1115 (D.Or. 2017) ........ 10, 15

*Hornish v. King Cty.*, 899 F.3d 680 (9th Cir. 2018) ........ 8

*Hudak v. Berkley Group, Inc.*, 2014 U.S. Dist. LEXIS 8168(D.Conn. Jan. 23, 2014) ........ 5

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F.Supp.2d 472 (D.Del. 2011) ........ 17

*International Shoe Co. v Washington*, 326 U.S. 310 (1945) ........ 9

*j2 Global Communs., Inc. v. Vitelity Communs., LLC*, No. 11-cv-07904-DDP (Ex), 2012 U.S. Dist. LEXIS 51793 (C.D. Cal. Apr. 12, 2012) ........ 19

*In re Jiffy Lube Int'l, Inc.*, 847 F.Supp.2d 1253 (S.D. Cal. 2012) .......... 21

*Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018) .......... 6

*Keifer v. Hosopo Corporation*, No. 3:18-CV-1353-CAB-KSC, 2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) .......... 20

*Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018) .......... 11

*King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018)

*Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal. 2010) .......... 21

*Kristensen v. Credit Payment Servs.*, 879 F.3d 1010 (9th Cir. 2018) .......... 7

*Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987) .......... 15

*Lazar v. Sadlier*, 622 F.Supp. 1248 (C.D. Cal. 1985) .......... 20

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) .......... 24

*Lushe v. Verengo Inc.*, No. CV 13-07632, 2014 WL 5794627 (C.D. Cal. Oct. 22, 2014) .......... 4

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir., 2018) .......... 18, 19

*Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395 (N.D. Ill. Sept. 7, 2016) .......... 19

*Mashiri v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 154534 (S.D. Cal. Oct. 28, 2013) ..................... 21

*Mavrix Photographs LLC. V. Livejounal, Inc.* 873 F.3d 1054 (9th Cir., 2017) ..................... 13

*Meeks v. Buffalo Wild Wings, Inc*., No. 17-cv-07129-YGR 2018 U.S. Dist. LEXIS 52328 (N.D. Cal. Mar. 28, 2018) ..................... 6

*Meyer v. Bebe Stores, Inc*., 2015 U.S. Dist. LEXIS 12060 (N.D. Cal. Feb. 2, 2015) ..................... 21

*Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368 (2012) ..................... 24

*Moriarty v. Glueckert Funeral Home, Ltd.,* 155 F.3d 859 (7th Cir. 1998) ..................... 4

*N.L. by mother Lemos v. Credit One Bank, N.A.,* No. 2:17-CV-01512-JAM-DB, 2018 WL 5880796 (E.D. Cal. Nov. 8, 2018) ..................... 19-20

*Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325 (9th Cir. 1985) ..................... 9

*In re Packaged Seafood Prods. Antitrust Litig*., 338 F. Supp. 3d 1079 (S.D. Cal. 2018) ..................... 11

*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998) ..................... 18

*Pebble Beach Co. v. Caddy,* 453 f.3d 1151 (9th Cir. 2006) ..................... 10

*Picot v. Weston,* 780 F.3d 1206 (9th Cir. 2015) ..................... 12, 14

*Reichman v. Poshmark, Inc*., 267 F. Supp. 3d 1278 (S.D. Cal. 2017) ..................... 21

*Rinky Dink Inc. v. Elec. Merch.*,
2014 U.S. Dist. LEXIS 161497 (W.D. Wash. Sep. 30, 2014) ................ 15

*Robbins v. Coca-Cola-Company*,
No. 13-CV-132-IEG (NLS),
2013 U.S. Dist. LEXIS 72725 (S.D. Cal. May 22, 2013) ..................... 21

*Sarei v. Rio Tinto, PLC*,
487 F.3d 1193 (9th Cir. 2007)
*reh'g en banc*, 550 F.3d 822 (9th Cir. 2008) ................................ 3-4

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ................................................ 12

*Shelton v. Nat'l Gas & Elec., LLC*,
No. 17-4063, 2019 U.S. Dist. LEXIS 59235 (E.D. Pa. Apr. 5, 2019) ....... 17

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........................................... 9, 12

*Sherles v. Fox*,
2018 U.S. Dist. LEXIS 103405 (W.D.Wash. June 20, 2018)............ 13-14

*Sinatra v. National Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ............................................... 13

*Singer v. Las Vegas Ath. Clubs*,
No. 2:17-cv-01115-GMN-VCF,
2019 U.S. Dist. LEXIS 48838 (D.Nev. Mar. 25, 2019) ..................... 23

*Smith v. State Farm Mut. Auto. Ins. Co.*,
2015 U.S. Dist. LEXIS 5231 (N.D. Ill. Jan. 13, 2015) ........................ 3

*Spiegel v. Engagetel*,
No. 1:15-cv-01809,
2016 U.S. Dist. LEXIS 134254 (N.D. Ill. Sep. 29, 2016) ..................... 3

*Spillman v. Dominos Pizza, LLC*,
No. 10-349-BAJ-SCR, 2011 U.S. Dist. LEXIS 17177
(M.D. La. Feb. 21, 2011).......................................................... 5

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F.Supp.2d 890 (N.D. Cal. 2009) ........ 4

*Telecom Asset Mgmt., LLC v. FiberLight, LLC*, 730 F.App'x 443 (9th Cir. 2018) ........ 14

*Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678 (9th Cir. 2014) ........ 2

*United States v. Bonds*, 608 F.3d 495 (9th Cir. 2010) ........ 4

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ........ 1

*Warciak v. Subway Rests., Inc.*, 880 F.3d 870 (7th Cir. 2018) ........ 2

*Warciak v. Subway Rests., Inc.*, 2019 WL 978666 (N.D. Ill Feb. 28, 2019) ........ 18

*Williams v. Washington*, 554 F.2d 369 (9th Cir. 1997) ........ 17

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ........ 10

*Wilson v. A.H. Belo Corp.*, 87 F.3d 393 (9th Cir. Cal. 1996) ........ 2

## STATUTES

47 U.S.C. § 227 (b)(1)(A) ........ 25

## RULES

Cal. Code Civ. Proc. § 410.10 ........ 9

Fed. R. Civ. P. 8(a)(2) ........ 21

Fed. R. Civ. P. 12(b) ........ 1

Fed. R. Civ. P. 12(b)(6) ........ 1

Fed. R. Civ. P. 15(a)(2) ........ 25

**OTHER**

*In re DISH Network, LLC,*
28 FCC Rcd 6574 (F.C.C. May 9, 2013) ........ *passim*

Restatement (Third) Of Agency (2006) ........ 3, 4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
7 FCC Rcd 8752 (1992) ........ 23-24

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
18 FCC Rcd. 14014 (2003) ........ 24, 25

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
27 FCC Rcd. 1830 (2012) ........ 24, 25

*In re Rules & Regulations Implementing the TCP Act of 1991 et al.,*
30 FCC Rcd 7961 (2015) ........ 24-25

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## I. INTRODUCTION

This action arises out of marketing efforts of Subway Franchisee Advertising Fund Trust, Ltd. ("Defendant" or "Subway") in using its agent, T-Mobile USA, Inc. ("T-Mobile"), to send, *en masse*, commercial text messages advertising a free Subway sandwich, to Malka L. Fishman ("Plaintiff" or "Fishman") and others consumers on their cell phones, in violation of the Telephone Consumer Protection Act "(TCPA"). The Complaint sufficiently alleges direct or vicarious liability and used of an autodialer. Moreover, the Court has specific personal jurisdiction over Subway based on agency principles. Lastly, Subway is not entitled to the limited wireless carrier exemption. Thus, Subway's Motion (Dkt. No. 20) should be denied.

## II. THE COMPLAINT SUFFICIENTLY ALLEGES THAT SUBWAY IS LIABLE FOR THE COMMERCIAL TEXT MESSAGES

The Complaint puts Subway on notice under Rule 8 of two theories of liability: direct and vicarious liability. *American Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786 (9th Cir. 1982). Plaintiff need not plead legal theories of agency. On a motion under Rule 12(b)(6), courts look to the pleadings. *See* FED. R. CIV. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

### A. Direct Liability

In terms of direct liability, Subway spends much of its briefing arguing that Subway did not directly send the text messages, but instead T-Mobile did. But Subway ignores a controlling Federal Communications Commission ("FCC") ruling indicating there are instances when a company may be held *directly* liable for TCPA violations of its hired telemarketer. "And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it - by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6583 (F.C.C. May 9, 2013).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Based on plausible allegations, that showing is met here. Plaintiff specifically alleges that Subway instructed T-Mobile, as its agent, on the content (regarding a specific Subway product) and the timing of the marketing text messages (for the Tuesday promotion), to be redeemed "at SUBWAY," for its financial gain, in an effort to advertise for Subway restaurants. *Id*. at ¶¶ 10, 13-14, 17-18.

In looking to a decision in the *Warciak* matter, Subway does not mention that decision is on appeal in the Seventh Circuit.[1] That is not surprising, as Subway lost a prior appeal in that matter in *Warciak v. Subway Rests., Inc.*, 880 F.3d 870, 873 (7th Cir. 2018), after it had argued that it could take advantage of T-Mobile's arbitration clause as a non-signatory to T-Mobile's arbitration agreement with its subscribers. *Id.* In other words, Subway argued a close relationship with T-Mobile when it suited its legal interests (as in *Warciak*), but now Subway seeks to distance itself from T-Mobile because it again is more advantageous to its legal interests.

The decision in *Thomas v. Taco Bell*, relied upon by Subway, does not constitute precedent (certainly not controlling authority) because it is an unpublished decision. In any event, *Thomas* did not hold that in all instances a company cannot be held directly liable for violations of the telemarketer, and it disregards the FCC's statement in the 2013 ruling.[2] Further, it was undisputed in that action that Taco Bell was not the sender. Here, Subway, as the seller, may plausibly be deemed the sender due to the high level of influence and control that Subway allegedly exerted over the mass text messaging campaign. Thus, Subway may plausibly be deemed the "sender" of the text messages, even though the Complaint alleges that Subway used T-Mobile to send the text messages.

Based on several allegations, the Complaint makes it clear that Subway sent

---

[1] No. 19-1577 [Plaintiff's Request for Judicial Notice, Ex 1., filed herewith].

[2] The Hobbs Act thus "vest[s] the courts of appeal with exclusive jurisdiction to review the validity of FCC rulings." *Wilson v. A.H. Belo Corp*., 87 F.3d 393, 396-97 (9th Cir. Cal. 1996). Thus, Subway cannot challenge validity of FCC rulings.

the text messages through T-Mobile. Compl., ¶¶ 14, 18, 33. Considering the webpage screenshot offered by Subway actually supports an agency relationship between Subway and T-Mobile because the webpage identifies Subway's restaurant logo (Dkt. No 20-6). Subway entered into an agreement for T-Mobile to send the text messages on its behalf and for Subway's benefit. Compl., ¶ 18.

Lastly, as in *Spiegel*, "[i]t is premature to rule at this early point in the litigation that the Defendants can under no circumstances be found to be so intimately involved in the placing of the phone calls to Spiegel as to be deemed an initiator, particularly when discovery has yet to be completed." *Spiegel v. Engagetel*, No. 1:15-cv-01809, 2016 U.S. Dist. LEXIS 134254, at *13 (N.D. Ill. Sep. 29, 2016). Therefore, dismissal is not warranted based on Subway's argument that it may not be held directly liable for the text messages.

**B. Vicarious Liability**

At the very least, the Complaint adequately alleges that Subway is vicariously liable for the marketing text messages sent on its behalf by its agent, T-Mobile. It is beyond dispute that a company may be held vicariously liable for its telemarketer's TCPA violations. *In re DISH Network, LLC,* 28 FCC Rcd at 6586. The Ninth Circuit has also recognized that a merchant may be held liable for outsourced telemarketing calls. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014) ("Although Campbell-Ewald did not send any text messages, it might be vicariously liable for the messages sent by Mindmatics."). Subway is on notice of its potential vicarious liability. Compl., ¶¶ 13-14, 17-18. *See e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, 2015 U.S. Dist. LEXIS 5231, at *15 (N.D. Ill. Jan. 13, 2015).

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01 (2006); *see also, Sarei v. Rio Tinto, PLC,* 487 F.3d 1193, 1202 (9th Cir.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

2007), *on reh'g en banc*, 550 F.3d 822 (9th Cir. 2008) (citing *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 n.15 (7th Cir. 1998) for the principle that federal common law of agency is derived from the Restatement of Agency); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F.Supp.2d 890, 899 (N.D. Cal. 2009) ("Federal common law is in turn guided by those principles set forth in the Restatement of Agency.") Agency can be established expressly, via a showing of actual authority, or it can be inferred, by finding apparent authority or ratification. *Id.* §§ 2.01, 2.03, 4.01. "Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b)." *In re DISH Network, LLC,* 28 F.C.C. Rcd. at 6590 n.124.

Similar to Subway, in *Charvat v. Allstate Corp*., the defendants argued that there was no vicariously liability for telephone calls because the plaintiff did not allege 'what arrangement, if any, that third party had with either defendant.'" 29 F. Supp. 3d 1147, 1150-51 (N.D. Ill. 2014). The Court disagreed, stating that "[t]hese objections are meritless because it is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability." *Id.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### 1. Actual Authority

The traditional agency test requires establishing: "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *Sun Microsystems*, 622 F.Supp.2d at 899 (citing Restatement (Third) of Agency § 1.01). *See also*, *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) ("To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent."); *Lushe v. Verengo Inc.*, No. CV 13-07632, 2014 U.S. Dist. LEXIS 157124, 2014 WL 5794627, at *2 (C.D. Cal. Oct. 22, 2014).

Subway is wrong that the Complaint does not allege facts plausibly showing actual authority, or in other words, the right to control T-Mobile in terms of the text messaging campaign advertising a Subway sandwich. Compl., at ¶¶ 10, 13-14, 17-18. Subway unreasonably suggests that T-Mobile sent out the text messages completely on its own, having nothing to do with Subway, despite the content of the text message advertising a free Subway product to be redeemed "at SUBWAY" (Compl. ¶ 10). "While defendants argue that plaintiff's TCPA claim is not plausible, more implausible is the theory that defendants have nothing to do with a telephone marketing campaign for their own products and services." *Hudak v. Berkley Group, Inc.*, 2014 U.S. Dist. LEXIS 8168, at *14 (D.Conn. Jan. 23, 2014). What "defies all credulity" (Def.s' Memo., 14:8) is that T-Mobile would send out promotional text messages advertising Subway sandwiches without Subway's authorization or direction. It is reasonable for Fishman to believe that Subway utilized T-Mobile to send the text messages to Fishman.

It does not detract from Plaintiff's plausible allegations that the text message campaign may have been part of the T-Mobile Tuesday promotion (Compl., ¶¶ 12-13). *See Spillman v. Dominos Pizza, LLC*, No. 10-349-BAJ-SCR, 2011 U.S. Dist. LEXIS 17177, at *10 (M.D.La. Feb. 21, 2011) ("the Court concludes that the complaint sufficiently alleges that the calls were either placed by Domino's or by a mandatary of Domino's.") The text message can both have been sent as part of the T-Mobile Tuesday program and also serve as an advertisement promoting Subway; the two are not mutually exclusive. Subway allegedly used the text messages "to advertise for Subway restaurant" (Compl., 13), as part of a "mutually beneficial relationship between Subway and T-Mobile" (*id*. at ¶ 14), as a "pretext to sell other items at Subway restaurants" (*id*. at ¶ 15).

Subway further incorrectly contends that Plaintiff "has attempted to get around the *Warciak* decision" (Def.'s Memo., 14:12-13). Even the Rahmanys in their complaint (*see* Dkt. No. 20-3) alleged that the texts were sent "by T-Mobile

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

and/or T-Mobile's agent(s)," which was years before the *Warciak* decision; and prior to the declaration at Dkt. No. 20-4. Similarly, Fishman reasonably alleges that "the SPAM text messages were sent by Subway through its agent T-Mobile" (Compl., ¶ 14). Again, Subway instructed T-Mobile as to the content (regarding a free Subway product) and timing of the marketing text messages, for its financial gain, in an effort to advertise for Subway restaurants. *Id*. at ¶¶ 10, 13-14, 17-18. Plaintiff does not merely allege a generic contractual agreement. Even the Restatement (Third) of Agency, cited by Subway, notes the "power to give interim instructions" is important in finding agency (Def.'s Memo., 15:16-17).

The facts here are distinguishable from those in *Meeks*. The text message there invited a Buffalo Wild Wings restaurant guest to download a Yelp application, but Yelp had nothing to do with providing the phone number to be notified by Buffalo Wild Wings of when a table was available. *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129-YG, 2018 U.S. Dist. LEXIS 52328, *4-5 (N.D. Cal. Mar. 28, 2018). The plaintiff in *Meeks* alleged that a different party—not the moving defendant—"controlled whether, when, and to whom to send the text messages, along with their content." *Id*. at *6. *Meeks* is further contrary to *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 n.3 (9th Cir. 2018), as *Meeks* improperly limits vicarious liability to a "classical" agency relationship, contrary to the FCC's 2012 ruling. Unlike in *Meeks*, T-Mobile's webpage shows a clear connection with Subway. Dkt. No. 20-6; *see also*, Compl., ¶ 11-12. Subway is trying desperately to disconnect itself from its own advertising campaign.

### 2. Apparent Authority

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 (2006). Fishman reasonably believed that Subway had authorized T-Mobile to act as its

agent in sending the text message concerning a free Subway product, such that Plaintiff could redeem a specific sandwich (i.e., "6" Oven Roasted Chicken sub") from Subway (Compl., ¶ 10). Had Subway not authorized the text message to be sent by T-Mobile, it seems unlikely that it would have honored the free sandwiches. This is particularly the case where all reasonable inferences are to be drawn in Plaintiff's favor. Thus, the factual allegations support apparent authority.

**3. Ratification**

The same factual allegations additionally support ratification by Subway. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1). An act is ratifiable "if the actor acted or purported to act as an agent on the person's behalf." *Id.* § 4.03.

The facts are distinguishable from *Kristensen*, where it was *undisputed* "that AC Referral did not communicate with or even know of the lenders or LeadPile before the lawsuit was filed," and since "AC Referral was neither an agent nor a purported agent of the lenders or LeadPile, AC Referral's actions do not qualify as ratifiable acts," *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014-1015 (9th Cir. 2018). Subway plausibly ratified the text messaging campaign in which Plaintiff was sent a text message for a Subway product, for the financial benefit of Subway through efforts to sell additional products. Compl., ¶¶ Compl., ¶¶ 10, 13-15, 18. Indeed, the free sandwich could only be redeemed on the Tuesday at a Subway restaurant. *Id.* at ¶ 10. Consequently, the Complaint satisfies the requirement of Rule 8 in pleading facts supporting direct, and/or vicarious liability (under various theories), on the part of Subway, which is sufficient to survive the 12(b)(6) motion.

**III. THERE IS SPECIFIC PERSONAL JURISDICTION OVER SUBWAY IN LIGHT OF ITS USE OF T-MOBILE AS ITS AGENT**

It is unclear whether Subway's Motion brings a facial challenge to jurisdiction or a factual one. In some instances, Subway looks to the Complaint to argue that the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

allegations are insufficient. In other places, Subway argues that "Plaintiff has not (and cannot) show" personal jurisdiction (Def.'s Memo., 5:21), and even goes so far to assert in its brief that "Plaintiff's agency allegations are patently false …" (*id*. at 7:5-6). If facial: Plaintiff easily makes a *prima facie* showing of jurisdiction. As explained in above, and incorporated here, there is a principle-agent relationship adequately alleged concerning the text campaign for Subway. Proof of an agency relationship is not required at the pleading stage. If factual: the Court should await a determination of the relevant facts on a summary judgment motion or trial, as the factual issues relating to agency go to the merits and are intertwined with the jurisdictional question. *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983).

A prior complaint, filed by different plaintiffs in *Rahmany*, does nothing to help Subway's position on the present Motion. First, even if the Court takes judicial notice of the existence of that other pleading, controlling authority prohibits this Court from considering the truth of the claims made in that pleading; as well as the other documents for which Subway requests judicial notice. *Hornish v. King Cty.*, 899 F.3d 680, 703 (9th Cir. 2018) ("Even if the records are filed on the public docket of the *Neighbors* case, we can take judicial notice only of the *filing* of the documents, and not of the truth of the documents' contents.") Second, should the Court take judicial notice of the irrelevant fact that such pleading was filed, the Court would see that the Rahmanys alleged the text messages were sent by both of the named defendants (Subway and T-Mobile). That is precisely because Subway may be deemed the sender due to its high level of control, and thus directly liable.

What Subway calls "evidence" (Def's Memo., 12:11) from another case is not dispositive here, nor is Plaintiff required to accept a declaration filed in the *Rahmany* matter as the final word in this matter. Subway merely requests judicial notice of that declaration, meaning the Court may at most consider the fact that it was filed, not its truth. 899 F.3d at 703. The declaration from Jeff Rosenfeld (Dkt. No.20-7), does not alter that result. As an attorney for Subway, he would not have required

personal knowledge of T-Mobile's policies, procedures or business activities. *See Bliesner v. Commun. Workers of Am.*, 464 F.3d 910, 915 (9th Cir. 2006) (requiring personal knowledge). Even if Subway had submitted its own declaration in the present action saying T-Mobile was not acting as its agent, the Court would not be required accept that as true, particularly when it is a disputed issue.

**A. Legal Standard Under Fed. R. Civ. P. 12(b)(2)**

California's long-arm statute extends jurisdiction to the limits imposed by the Federal Constitution. *Cal. Code Civ. Proc.* § 410.10. *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985). A defendant is subject to specific jurisdiction in a forum state if they have minimum contacts there, such that hearing the case in the forum comports with traditional notions of substantial justice and fair play. *International Shoe Co. v Washington*, 326 U.S. 310, 316 (1945). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being hailed into court there. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

On a factual challenge, the court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when a district court acts on a motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. *Sher*, 911 F.2d at 1361. The plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted). *See AT&T* v. *Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (where trial court rules on jurisdictional issue based on affidavits and discovery materials without holding evidentiary hearing, plaintiff need only make *prima facie* showing). In such instance, all of Plaintiff's allegations must be accepted as true, unless controverted by affidavits, and all conflicts in evidence must be

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

resolved in Plaintiff's favor. *Id*. (citation omitted); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The court must resolve all disputed facts regarding jurisdiction in favor of the plaintiff. *Pebble Beach Co. v. Caddy*, 453 f.3d 1151, 1154 (9th Cir. 2006).

**B. Specific Personal Jurisdiction May Be Premised on Agency**

Subway incorrectly takes the position that specific personal jurisdiction over an out-of-state defendant may never be premised on an agency relationship. "The Supreme Court in *Daimler* made clear that an agent's contacts with the forum state are relevant to the analysis of specific jurisdiction. *Daimler* only overruled Unocal with respect to the relevance of an agent's contacts for purposes of analyzing general jurisdiction." *Helicopter Transp. Servs. v. Sikorsky Aircraft Corp.*, 253 F. Supp. 3d 1115, 1126 (D.Or. 2017) (emphasis added); *see also, In re Chinese-Manufactured Drywall Prods. Liab. Litig*., 753 F.3d 521, 531 (5th Cir. 2014) (holding that "*Daimler* therefore embraces the significance of a principal-agent relationship to the specific-jurisdiction analysis, though it suggests that an agency relationship alone may not be dispositive," before looking to five factors to determine if agency could be assigned). Subway's argument based on *Daimler* is overextending the narrow, factually-specific holdings that stop far short of excluding consideration of agency in determining personal jurisdiction. "[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman,* 571 U.S. 117, at 135, fn. 13 (2014).

In *Williams v. Yamaha Motor Co.*, the Ninth Circuit Court of Appeals, in referring to its "particular *formulation* for finding an agency relationship," expressed that the *Daimler* Court's criticism of the *Unocal* standard found fault with the standard's own internal logic, and therefore applies with equal force regardless of whether the standard is used to establish general or specific jurisdiction. 851 F.3d 1015, 1024 (9th Cir. 2017). Subway also reads *Williams*, which concerned a parent-subsidiary relationship, too narrowly because the Court went on to apply the agency

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

test in the alternative after stating, "Assuming, however, that some standard of agency continues to be 'relevant to the existence of *specific* jurisdiction'" (*Williams*, 851 F.3d at 1024). *See In re Packaged Seafood Prods. Antitrust Litig*., 338 F. Supp. 3d at 1165, fn. 29 (S.D. Cal. 2018) ("The *Williams* court did, however, apply the agency test for specific jurisdiction, in the alternative."). The *Williams* Court would not have done so if agency theory could never be used to show specific personal jurisdiction.

Various courts, post-*Williams*, have recognized the agency test for specific jurisdiction is viable. *See e.g., Delacruz v. Serv. Corp. Int'l*, No. 1:18-cv-00154-LJO-EPG, 2018 U.S. Dist. LEXIS 84172, at *11-12 (E.D. Cal. May 17, 2018) ("because the Supreme Court explicitly reserved the question of whether an agency analysis might be relevant to the specific jurisdiction context, the Court analyzes the agency theory only in the specific jurisdiction context below."); *Ferrari v. Mercedes Benz USA, LLC*, No. 17-cv-00018-YGR, 2017 U.S. Dist. LEXIS 114271, at *5-6 (N.D. Cal. July 21, 2017) (noting "Agency relationships may be relevant to the existence of specific jurisdiction"); *Heidelberg USA, Inc. v. PM Lithographers, Inc*., No. CV 17-02223-AB (AJWx), 2017 U.S. Dist. LEXIS 218428, at *21 (C.D. Cal. Oct. 19, 2017) (Birotte, Jr.) (noting that "an agency relationship may be able to justify the exercise of specific jurisdiction," but concluding the plaintiff did not make a prima facie showing of agency); *Heber v. Toyota Motor Sales U.S.A., Inc*., 2018 U.S. Dist. LEXIS 153073, *8 (C.D. Cal. June 11, 2018) (Guilford) ("The Ninth Circuit has left open the question of whether an agency relationship between a parent and a subsidiary might impute the subsidiary's forum contacts to the parent.").

Even the decision in *Kellman* believed that specific personal jurisdiction can still be shown after *Williams*, in stating, "[T]o establish personal jurisdiction on an agency theory, the plaintiffs must show that the parent company had 'the right to substantially control its subsidiary's activities.'" *Kellman v. Whole Foods Mkt., Inc*., 313 F. Supp. 3d 1031, 1048 (N.D. Cal. 2018). In cases where agency is

sufficiently plead, agency can establish specific jurisdiction. Subway is wrong that a contrary finding would collapse any distinction between general and specific jurisdiction, as specific jurisdiction would still require a showing of purposeful availment and look to the but for test in tort cases.

Were the Court not to permit agency theory to establish specific personal jurisdiction over Subway for Subway's own advertising, Plaintiff, an individual consumer in California, would unreasonably be required to litigate her TCPA claims on the other side of the country in Connecticut where Subway is located. (Compl., ¶ 5). Adopting Subway's position would mean that a company (even one that advertises nationally) could only be sued in its home state in instances where it used an agent to commit the tort. This unfairly disadvantages individual consumers. It would also undue several decades of jurisprudence in this Circuit. *See Sher*, 911 F.2d at 1363 ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal.")

Thus, the Court may exercise specific personal jurisdiction over Subway.

**1. Subway Purposefully Directed Harmful Acts at California**

Where a case sounds in a tort, courts employ the purposeful direction test. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Acts are purposefully directed at a forum state if the defendant (1) commits an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015). Any injury that results from the defendant's acts is a jurisdictionally material contact in the state. *Id.* at 1214.

**a. *Subway committed an intentional act through T-Mobile, its authorized agent***

In *Mavrix Photographs LLC. V. Livejounal, Inc.*, the Ninth Circuit adopted the Restatement (Third)'s definition of Agency as, "the fiduciary relationship that

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." 873 F.3d 1054 (9th Cir., 2017). Agency can be created through actual or apparent authority to act on the principal's behalf, and the agent must be subject to the principal's control. *Id.*

Actual authority exists where a principal agrees to allow the agent to act on its behalf. *Id.* Fishman alleges that Subway authorized T-Mobile to advertise on its behalf by directing T-Mobile to send its unsolicited promotional text message to California residents (Compl. ¶¶ 14, 17) without consent (*id.* at ¶ 25). As such, T-Mobile had actual authority to act as Subway's agent. In addition, T-Mobile acted with Subway's apparent authority to advertise on its behalf. Apparent authority exists where a third person reasonably believes that the agent has authority to work as the principal's agent. *Mavrix*, 873 F.3d at 1055. Any objective recipient of Subway's promotional text would reasonably believe that Subway approved the campaign for one of its products, such that T-Mobile had authority to act for Subway.

Purposeful availment requires that the defendant "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). Subway exercised control over the messages that T-Mobile sent to its customers in California. Subway instructed T-Mobile which offers they should include in each message (the content: a specific sandwich), where customers could redeem the offer (at Subway), and the timing of the offer (a Tuesday promotion). Compl., ¶¶ 10, 13, 17-18. This level of control further supports that T-Mobile was acting Subway's agent in sending the text message.

The alleged violations of the TCPA were directed at plaintiff in California, and Subway is responsible for T-Mobile's intentional and wrongful acts. *See Sherles v. Fox*, 2018 U.S. Dist. LEXIS 103405, at *17 (W.D.Wash. June 20, 2018) ("In entering into an agency relationship with Rule, Foley and the agency contemplated

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

significant future consequences in Washington and committed themselves to ongoing obligations with a citizen of Washington.")

The Ninth Circuit finds an intentional act where a defendant intended to perform a physical act in the real world. *Picot*, 780 F.3d at 1214. Subway intended to send its unsolicited promotion to all of T-Mobile's subscribers, and specifically intended for messages to be directed to California residents. Here, Subway's action manifested in the real world when its promotion was sent to Fishman's mobile phone. Compl., ¶ 10. Subway instructed T-Mobile on the language of the advertisement, its logo is found on T-Mobile's website under the promotional program, and the marketing text message was intentionally sent to Fishman as a T-Mobile customer to advertise for Subway. *Id.* at 10, 13-14, 16, 24.

#### b. *Subway and its Agent T-Mobile, expressly aimed their conduct at California*

In *Dole Food Co. v. Watts*, the Ninth Circuit held that a defendant expressly aimed conduct towards a forum state where a plaintiff alleged that the defendant directed wrongful conduct to a plaintiff whom the defendant knew to be a resident of the forum state. 303 F.3d 1104, 1111 (9th Cir. 2002). Subway directed T-Mobile to send text messages to California, thereby aiming activity towards the forum state. Compl., ¶ 10, 13, 17-18. "This conferral of general agency authority for TAM to lease FiberLight's California assets was 'sufficiently purposeful' to justify California's exercise of specific personal jurisdiction over FiberLight." *Telecom Asset Mgmt., LLC v. FiberLight, LLC*, 730 F.App'x 443, 445 (9th Cir. 2018). *See also*, *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1990) (the decision to provide a nationwide press coverage permitted jurisdiction in Montana where the claims happened to be filed).

#### c. *Subway Caused Harm in the Forum State*

In *Rinky Dink Inc. v. Elec. Merch.*, the court reasoned that the defendant knew that the calls they transmitted to the state would cause harm in that state and held

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

this sufficient for the prima facie showing required for personal jurisdiction. 2014 U.S. Dist. LEXIS 161497, at *7 (W.D. Wash. Sep. 30, 2014). Here, Subway's actions in the state are intimately related to Ms. Fishman's harm; indeed, on or about September 3, 2016, through its agent, Subway sent Ms. Fishman a promotional message on her cell phone with a California area code (i.e. 310), while Fishman was residing in California. Compl., ¶¶ , 4, 10, 13; Fishman Declaration ("Fishman Decl."), ¶ 3; Plaintiff's Request for Judicial Notice, Ex. 3.

Subway and T-Mobile engaged in conduct that is nearly indistinguishable from the pre-recorded phone calls from *Rinky Dink*. They knew that their promotional messages would cause harm in the state, and nationwide, in advertising for Subway restaurants, of which there are several in the County of Los Angeles. Compl., ¶ 4, 6, 7, 10, 13; Fishman Decl., ¶¶ 2-4. This satisfies the Picot Effects test for purposefully directed contacts, so the first prong of the *Schwarzenegger* jurisdictional analysis is satisfied.

Lastly, similar to *Helicopter Transp. Servs*., Subway's conduct, through T-Mobile, connects to California "in a meaningful way." 253 F. Supp. 3d at 1129. As explained in that case, it would be inappropriate to allow a company to avoid personal jurisdiction by using an out-of-state agent when the company solicits business in the forum state. *Id.* The same rationale applies to Subway.

**2. <u>The Claims Arise Out of Subway's Actions in the Forum</u>**

In *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987), the court employed a sliding scale to determine the degree to which the defendant's action caused harm to the plaintiff such that the defendant is subject to jurisdiction in the forum. *Id.* Courts look to the number of contacts in the state, and the connection between those contacts to the plaintiff's harm. *Id.* Subway has substantial contact in California. Compl., ¶ 6-7, 10. Subway certainly is alleged to have advertised for Subway-branded restaurants in California. Compl., ¶¶ 7, 10, 13. The unsolicited text message sent to Plaintiff, as a T-Mobile customer, directly cause harm to Plaintiff in the forum,

where she resides and resided at the time of the text message, as explained above. The harmful message was the immediate cause of her suit against Subway and T-Mobile. These facts are distinguishable from *Feinstein*, where the data breach from unforeseen criminal activity was "wholly unrelated to" the hotel's regular management activities. [Dkt. No. 20-7]. Here, on the other hand, but for the unsolicited text message that Subway caused T-Mobile to send as its agent, there would be no TCPA claim. Plaintiff's claim is closely related to the text message campaign of Subway; in fact, it stems from it, such that Subway's contact in the state was clearly closely linked to Fishman's harm. This prong is satisfied.

**3. Exercising Specific Jurisdiction here is Reasonable and Comports with Notions of Substantial Justice and Fair Play**

In *Bancroft*, 223 F.3d at 1088, the court outlines a 7-factor test for whether exercising jurisdiction is reasonable, balancing the (1) extent of Defendant's purposeful interjection into the forum state; (2) burden on defendant in defending the forum; (3) extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) importance of the forum for the plaintiff's interest in convenient and effective relief; (7) the existence of an alternative forum. *Id.*

All the factors favor exercising personal jurisdiction over Subway in this forum. Subway is extensively interjected into the County of Los Angeles, California, because Subway advertised there to a California resident, through the text messaging campaign for Subway restaurants located in the State.[3] Compl., ¶ 4, 6, 10, 13. *See Divicino v. Polaris Industries*, 129 F.Sup.2d 425, 433 (D.Conn. 2001) (explaining that "[advertising] in [a] forum" and "[establishing] channels for providing

[3] Defendant asserts that it does not "operate any restaurants" (Def.s' Memo., 8:8-9), but the Court may not consider such factual assertion on the present motion, not supported by affidavit. Regardless, Subway still *advertised* for those fast food restaurants in California (Compl., ¶¶ 6, 10), which is a relevant consideration.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

information for customers within [a] forum," are relevant factors in establishing personal jurisdiction); *Havel v. Honda Motor Europe Ltd.*, No. H-13-129, 2014 U.S. Dist. LEXIS 140983, n.14 (S.D. Tex. Sep. 30, 2014) ("Exercising jurisdiction over a company that may have been complicit in an intentional tort directed at plaintiffs in Texas does not offend fair play and substantial justice.") Subway has not met its burden to show a compelling case that exercising jurisdiction is unreasonable here. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir. 1986).

Subway, an advertising company (looking at is legal name is telling, Compl., ¶ 1), faces a minimal burden in adjudicating the case in this jurisdiction.[4] In this age of technology, such element is of lesser importance to a company like Subway. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003). Subway here has not shown any unique or unusualy burden in litigating in California. *See Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F.Supp.2d 472, 477, fn. 1 (D.Del. 2011). Subway is currently litigating a virtually identical TCPA action in the Northern District of Illinois in *Warciak*, and even litigated the *Rahmany* matter in Washington.

This forum has a compelling interest in adjudicating the claim because Subway's actions violated the national TCPA and harmed residents of California. *See generally*, *Williams v. Washington*, 554 F.2d 369, 370 (9th Cir. 1997) (a state has a valid interest in enforcing consumer protection acts). *See also*, *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *24 (E.D. Pa. Apr. 5, 2019) ("Plaintiff clearly has an interest in obtaining relief under the TCPA"). The Ninth Circuit assumes that a forum state "'maintains a strong interest in providing an effective means of redress for its residents tortiously

---

[4] Subway offers no actual evidence that the "burden on SFAFT of litigation this case in California would be substantial …" (Def.'s Memo., 9:27). Subway merely asserts that "evidence" and "witnesses are all in Connecticut." *Id.* at 9:28. Fishman is in California (Compl., ¶ 4), and T-Mobile is located in Washington [Plaintiff's Request for Judicial Notice, Ex. 2].

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

injured.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citation omitted).

It is appropriate to hear the case in California, as this is where Plaintiff lives, and that is where the harm to Plaintiff occurred. Compl., ¶¶ 1, 3, 4, 6, 10, 13; Fishman Decl., ¶¶ 2-4. While there may be consumers in other states that have been affected, it was reasonable for Subway to expect to defend the TCPA claims of Fishman here, since the text was directed to her in California. Fishman, an individual consumer, should not have to litigate her TCPA claims on the other side of the country in this tort action against Subway. Compl., ¶¶ 4-5.

Fishman has an interest in favorable controlling authority in *Marks* on the automatic telephonic dialing system ("ATDS") issue. In *Marks*, the Ninth Circuit interpreted "automatic telephone dialing system" to mean "equipment which has the capacity – (1) to store numbers to be called **or** (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir., 2018) (emphasis added). The Second Circuit's interpretation of an ATDS differs dramatically. *King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) (requiring current functionality to dial random or sequential phone numbers). Subway challenges personal jurisdiction (when it did not do so in the *Warciak*, *see Warciak v. Subway Rests., Inc.*, 2019 WL 978666 (N.D. Ill Feb. 28, 2019)), because it seeks to forum shop to avoid the controlling *Marks* decision.

The facts asserted in the Complaint allege that Subway contracted with T-Mobile to conduct a marketing campaign on its behalf. Subway, through its agent, T-Mobile, intentionally directed harmful activity to the forum when they sent unsolicited messages to Ms. Fishman's California phone number that urged her to obtain a free sandwich at one of the Subway's nearby restaurant locations (see Compl., ¶¶ 6, 9, 10; Fishman Decl., 3), and Subway should be held accountable for its actions in this forum. Exercising jurisdiction over Subway is reasonable here.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Should the Court believe that Plaintiff has not met a *prima facie* showing for specific personal jurisdiction based on agency theory, Plaintiff respectfully requests that she be permitted limited jurisdictional discovery to support specific personal jurisdiction, based on the colorable claim asserted in the Complaint. *See e.g., Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*, No. CV 10-8736, 2011 U.S. Dist. LEXIS 73376, 2011 WL 2604886, at *3 (C.D. Cal. July 1, 2011); *j2 Global Communs., Inc. v. Vitelity Communs., LLC*, No. 11-cv-07904-DDP (Ex), 2012 U.S. Dist. LEXIS 51793, at *9-10 (C.D. Cal. Apr. 12, 2012); *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016) (plaintiffs may obtain evidence of an agency relationship through discovery and that "it is irrelevant that a plaintiff cannot identify … what arrangement [a] third party had with the defendant" at the pleading stage). Specifically, Plaintiff requests limited jurisdictional discovery as to at least the follows: i) contracts/agreements between T-Mobile and Subway relating to the text messaging campaign; ii) written communications relating to the campaign; iii) logs and reports concerning the campaign, including which phone numbers in California were to be sent the text messages and which were actually sent the text messages; iv) records of any payments, or exchange of goods or service, between Subway and T-Mobile relating to the text messaging campaign; v) Subway's connections to the forum; and vi) a limited Rule 30(b)(6) deposition addressing the above document requests.

## IV. PLAINTIFF PLAUSIBLY PLEADS USE OF AN ATDS

In March 2018, the U.S. Court of Appeals for the D.C. Circuit overturned the FCC's prior definition of ATDS. *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018). Consequently, "only the statutory definition of ATDS as set forth by Congress in 1991 remain[ed]." *Marks*, 904 F.3d at 1049. After *Marks*, an ATDS is "a device that has the capacity to store phone numbers and dial them automatically would qualify as an ATDS, even if it did not create or develop the numbers dialed on its own." *N.L. by mother Lemos v. Credit One Bank, N.A.*, No.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

2:17-CV-01512-JAM-DB, 2018 WL 5880796, at *2 (E.D. Cal. Nov. 8, 2018). *See also*, *Keifer v. Hosopo Corporation*, No. 3:18-CV-1353-CAB-KSC, 2018 WL 5295011, at *4 (S.D. Cal. Oct. 25, 2018).

In terms of pleading an ATDS, Subway ignores several important factual allegations in stating that the Complaint includes nothing but a recitation of "the statutory definition of an ATDS with the additional of a few conclusory statements" (Def's Memo., 20:6-7). When the Complaint, as a whole, is properly considered, it is patent that use of an ATDS here is sufficiently alleged, in particular when following controlling authority in *Marks*. *See Lazar v. Sadlier*, 622 F.Supp. 1248, 1251 (C.D. Cal. 1985) ("As to materiality, the complaint taken as a whole establishes facts that support a finding that the facts pled would be important to a reasonable investor, as the Ninth Circuit requires.").

Subway downplays the controlling decision in *Marks*, as it holds that pleading random or sequentially generated numbers is not an ATDS requirement. An ATDS includes equipment that automatically dials stored phone numbers, such as from a list or database. Specifically, the Marks Court stated, "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Marks*, 904 F.3d at 1052. Such "capacity" is alleged here. *See* Compl., ¶¶ 9-13, 16, and 19-20. As Plaintiff's wireless carrier, T-Mobile would have her phone number stored in its database in connection with sending automatically the same or substantially same, marketing text message to Plaintiff and other T-Mobile customers nationwide. Courts may rely on judicial experience and common sense in determining the plausibility of factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Should Subway argue in its reply brief that *Duguid* requires pleading of detailed information concerning the dialing system used, that would be a misreading of said ruling. While the Court of Appeals in *Duguid* stated "[t]he amended

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

complaint explains in detail how Facebook automates even the aspects of the messages that appear personalized," *Duguid v. Facebook, Inc*., No. 17-15320, 2019 U.S. App. LEXIS 17675, at *8 (9th Cir. June 13, 2019), Rule 8 of the Federal Rules of Civil Procedure only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, provided the claim asserted is plausible on its face. *Twombly*, 550 U.S. at 555. The facts pled here are in line with *Duguid*.

Even before *Marks*, many courts had acknowledged the difficultly a plaintiff would have in knowing details about the particular dialing system used by the defendant, absent discovery. *See e.g., Reichman v. Poshmark, Inc*., 267 F. Supp. 3d 1278, 1286 (S.D. Cal. 2017); *Mashiri v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 154534 (S.D. Cal. Oct. 28, 2013). Rule 8 is met here. Plaintiff's factual allegations are as specific and detailed as the context allows, and certainly sufficient to state a short and plain statement of entitlement to relief under Rule 8. *See In re Jiffy Lube Int'l, Inc*., 847 F.Supp.2d 1253, 1260 (S.D. Cal. 2012) ("Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage.") (citation omitted).

Subway also allegedly sent these text messages *en masse* to thousands of consumers nationwide (Compl., ¶ 13). Not only have courts found this to be a sign of use of an ATDS (*see Meyer v. Bebe Stores, Inc*., 2015 U.S. Dist. LEXIS 12060, at *12-14 (N.D. Cal. Feb. 2, 2015); *Robbins v. Coca-Cola-Company*, No. 13-CV-132-IEG (NLS), 2013 U.S. Dist. LEXIS 72725, at *7-8 (S.D. Cal. May 22, 2013)), but the TCPA was designed, in part, to protect the public from impersonal mass calls. *See Kramer v. Autobytel, Inc*., 759 F.Supp.2d 1165, 1172 (N.D. Cal. 2010).

The factual allegations are far from a mere formulaic recitation of the ATDS definition in Armstrong, which Subway relies on heavily. The *Armstrong* Court

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

stated that "[i]t is equally possible that the two text messages were sent manually by a person or perhaps not using an ATDS at all." *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2018 U.S. Dist. LEXIS 216246, at *16 (C.D. Cal. Dec. 21, 2018). Subway does not suggest that the texts, sent *en masse*, were manually sent, one-by-one, by someone entering the target phone number, typing out the same content, and then pressing send; and then doing that thousands of times. Sophisticated automated equipment was used for the text message campaign at issue, utilizing short massage script technology. Compl., ¶ 10, 11, 16.

Notably, *Armstrong* relied, in part, on *Flores*. In *Flores*, the Ninth Circuit explained that "dialing equipment does not need to dial numbers or send text messages 'randomly' in order to qualify as an ATDS under the TCPA." *Flores v. Adir Int'l, LLC*, 685 F.App'x 533, 534 (9th Cir. 2017). In so recognizing, the *Flores* Court found that it is reasonable there to infer that the equipment Adir used has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, even if it was not presently being used for that purpose. *Id*. at 534. Although *Flores* imposed a stricter ATDS requirement, as it was pre-*Marks*, Plaintiff similarly alleges here that Subway caused to be sent an automated marketing, of uniform (or near uniform) content, *en masse*, to thousands of consumer nationwide, using short message script technology (SMS 459), in a short period of time (Compl., ¶¶ 9, 10, 13, 16). The equipment used not only has the capacity required by the statutory text of the TCPA (*id*. at ¶ 18), but it also "has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention" (*id*. at ¶19). Such text messages were unsolicited SPAM. *Id*. at ¶ 14.

Several post-*Marks* decisions support that the Complaint plausibly alleges use of an ATDS. *See e.g*., *Keifer v. HOSOPO Corp*., 2018 U.S. Dist. LEXIS 183468, at *10; *Gonzalez v. Hosopo Corp*., 371 F. Supp. 3d 26, 35 (D. Mass. April 9, 2019) (agreeing with *Marks'* definition of an ATDS and holding that "the high number of calls in a short period of time, all for the same purpose, raises a plausible inference

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

that an automated system was used."). *See also, Singer v. Las Vegas Ath. Clubs*, No. 2:17-cv-01115-GMN-VCF, 2019 U.S. Dist. LEXIS 48838, at *16 (D.Nev. Mar. 25, 2019) (On motion for summary judgment: "The evidence in the record demonstrates the Nuxiba system has the present capacity to store numbers to be called, and to dial such numbers.") The ATDS alleges are well-pled in this Complaint here.

## V. THE LIMITED CARRIER EXEMPTION IS INAPPLICABLE

The wireless carrier exemption is inapplicable to Subway for the text messaging campaign concerning a Subway sandwich. That exemption only applies to calls or texts sent by a wireless carrier to its customers concerning the carrier's *own* services, not Subway's food products. The exemption is limited in nature; it may apply to wireless carriers, not the advertising entity of Subway restaurants.

The Supreme Court rejected a similar argument in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), as revised (Feb. 9, 2016), in which the defendant attempted to claim immunity from a TCPA claim because it had sent texts on behalf of the Navy. The Supreme Court refused to recognize this type of "derivative immunity" and held that the defendant must answer for its own conduct and the conduct of its agents. *See id*. at 673. As Subway hired T-Mobile to send the text messages as its agent, Subway is legally responsible for the text messages. "The goal of the TCPA is to prevent invasion of privacy, and the person who chooses to send an unwanted invitation is responsible for invading the recipient's privacy even if that person does not know how the invitation will be sent." *Cour v. Life360, Inc*., No. 16-CV-00805-TEH, 2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279, at *4 (N.D. Cal. July 28, 2016) (internal citation omitted).

The narrow exemption for wireless carriers does not apply to such commercial advertising, especially concerning a different company's sandwich product. The exemption only applies to calls or texts sent by a wireless carrier to its customers concerning the carrier's own services. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752 (1992)

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

(“[N]either TCPA nor the legislative history indicates that Congress intended to impede communications between radio common carriers and their customers regarding the delivery of customer services by barring calls to cellular subscribers for which the subscriber is not [charged]”) (emphasis added).

Notably, the exemption here does not even apply to T-Mobile, as it covers only service-related informational messages, not unsolicited advertising. *See* Compl., ¶ 24; *see also, In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14098 (2003) (“calls from phone companies to customers regarding new calling plans” are considered advertisements and require prior express consent, “regardless of the customer service element to the call.”)

The FCC has provided two examples of the types of calls it meant to protect from TCPA liability, none of which are applicable here to Subway’s advertising. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1834 n.26 (2012). The exception does not apply outside a limited context. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) (the wireless carrier exemption covers “calls made by cellular carriers to cellular subscribers (as part of the subscriber’s service),” and finding “no indication that the FCC’s statement applies more broadly than this limited context.”)

The promotional text message, offering a free Subway sandwich, does not fall within the limited exception, as it concerns the marketing efforts of Subway’s products/services. Moreover, from a public policy perspective, to allow companies like Subway to utilize the carrier exemption would defeat the purpose of the TCPA to combat unsolicited telemarketing. “Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls” (*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 368 (2012)), and thus the TCPA was born. “Congress enacted the TCPA in 1991 to address certain [calling] practices thought to be an invasion of consumer privacy and a risk to public safety.” *Rules and Regulations Implementing the*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd 7961, 7967, para. 4 (2015) (quoting Pub. L. No. 102-243, § 2(9) (1991)). Applying the exemption here would allow any telemarketer to contract with phone carrier to send its advertising for the company without the need to obtain express consent (47 U.S.C. § 227(b)(1)(A)), giving telemarketers free reign to SPAM consumers with impunity.

There is simply no support for Subway's position that it may take advantage of the narrow carrier exemption. Subway cannot enter into an arrangement with T-Mobile to obviate the need for such consent. *See* 18 FCC Rcd. at 14097 (noting Congress believed regulating robodialed advertisements "is the only effective means of protecting telephone consumers from this nuisance and privacy invasion"); *see also,* 27 F.C.C.R. at 1844 (concerning consent requirement). This is especially the case when the TCPA is a remedial statute designed to protect consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. Pa. 2013) ("[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers.").

## VI. CONCLUSION

In sum, the Motion should be denied in its entirety. The Court has specific personal jurisdiction over Subway under agency principles; the ATDS and vicarious liability allegations are sufficiently pled; and Subway is not entitled to the limited wireless carrier exemption. Should the Court find the Complaint is not adequately pled, leave to amend should be granted in the interests of justice. Fed. R. Civ. P. 15(a)(2); *DeSoto v. Yello Freight System, Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

Dated: July 1, 2019

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: s/ JASON A. IBEY
JASON A. IBEY
ATTORNEY FOR PLAINTIFF

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626