# United States District Court
# Central District of California

| | |
|---|---|
| MALKA L. FISHMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SUBWAY FRANCHISEE ADVERTISING FUND TRUST, LTD. d/b/a SUBWAY,<br><br>    Defendant. | Case No: 2:19-cv-02444-ODW (ASx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [20]** |

## I. INTRODUCTION

Pending before the Court is a Motion to Dismiss for lack of personal jurisdiction of Defendant Subway Franchisee Advertising Fund Trust, Ltd. d/b/a Subway ("Subway") and for failure to state a claim. (Mot. to Dismiss ("Mot."), ECF No. 6.) For the reasons that follow, the Court **GRANTS in part and DENIES in part** Subway's Motion.[1]

## II. BACKGROUND

Plaintiff Malka L. Fishman ("Fishman") brings suit against Subway and alleges that Subway violated the Telephone Consumer Protection Act ("TCPA") by using an

---

[1] Having carefully considered the papers filed in connection to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

automatic telephone dialing system ("ATDS") to send an unsolicited text message to her cellular device ending in "3728". (Compl. ¶¶ 5, 9, ECF No. 1.) On or about September 3, 2016, Fishman alleges that she received a text message outside the scope of any consent that she may have provided to T-Mobile. (Compl. ¶ 24.) The text message stated "This T-Mobile Tuesday, score a free 6" Oven Roasted Chicken sub at SUBWAY, just for being w/ T-Mobile. Ltd supplies. Get app for details:" (the "Text Message"). (Compl. ¶¶ 9, 10.) Fishman alleges that though she consented to receiving text messages from T-Mobile concerning its wireless telephone services, she did not consent to receiving advertisements. (Compl. ¶ 24.) The Text Message also contained a link to t-mo.com that directed Fishman to a webpage that advertised the "T-Mobile App" and "T-Mobile Tuesdays." (Compl. ¶¶ 11, 12.) Fishman alleges that Subway was responsible for the transmission of the Text Message that was sent to thousands of wireless telephone numbers nationwide. (Compl. ¶¶ 13, 14.) Moreover, Fishman alleges that T-Mobile was acting under the direction and control of Subway and for the financial benefit of Subway. (Compl. ¶¶ 13, 15, 18.)

Fishman alleges that "the equipment used to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator . . . without human intervention." (Compl. ¶¶ 19, 20.) Fishman alleges that she suffered invasion of privacy and was "frustrated and annoyed" by the Text Message. (Compl. ¶¶ 26, 27.)

Subway now moves to dismiss for lack of personal jurisdiction and failure to state a claim. (*See generally* Mot.)

### III.   REQUEST FOR JUDICIAL NOTICE

Both Fishman and Subway file requests for judicial notice. Fishman requests the Court judicially notice (1) appellate docket report in the matter of *Warwick v. Subway Restaurant, Inc.*, (2) information from the Secretary of State website concerning the state of incorporation of T-Mobile, and (3) information from a government website regarding the history of the telephone area code 310. (Pls.' Req.

for Judicial Notice, ECF No. 22-2.) Subway requests the Court to judicially notice (1) a Complaint filed against T-Mobile in the Western District of Washington, (2) a Motion to Compel Arbitration filed in the aforementioned T-Mobile matter, (3) an Order granting a Motion to Dismiss in the Central District of California, and (4) a screenshot of the T-Mobile Tuesdays website mentioned in Fishman's Complaint.

The Court may take judicial notice of "facts not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201.

The Court **DENIES** as moot Fishman's first two requests because the Court does not find them pertinent in the disposition of this motion. As for Fishman's third request, the Court takes judicial notice that the area code "310" is within the West Los Angeles area. Fed. R. Evid. 201; *See Eliman v. Law Office of Weltman*, No. 12-cv-01599-DMG (FMOx), 2013 WL 12119720, at *4 (C.D. Cal. Jan. 2, 2013) (taking judicial notice that the area code 310 includes the West Los Angeles area). The Court **DENIES** as moot Subway's requests as the Court does not find them pertinent in the disposition of this motion.

### IV. LEGAL STANDARD

**A. 12(b)(2)**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a party may seek to dismiss an action for lack of personal jurisdiction. Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Accordingly, a court only "inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th

Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," uncontroverted allegations in the complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *see AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Factual disputes are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1554 (9th Cir. 2006).

A court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A district court may exercise either general or specific personal jurisdiction over non-resident defendants. *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Under California's long-arm statute, courts may only exercise personal jurisdiction if doing so "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

**B.     12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## V. DISCUSSION

### A. Personal Jurisdiction

Subway moves to dismiss Fishman's claims for lack of personal jurisdiction. (Mot. 3.) Personal Jurisdiction can be general or specific jurisdiction. *Fed. Deposit Ins. Corp.*, 828 F.2d at 1442.

#### i. General Jurisdiction

For general jurisdiction to exist over a defendant, the defendant's affiliations with the state must be so "continuous and systematic" so as to render it essentially "at home" in the forum state. *Daimler AG*, 571 U.S. at 139. A corporation will be deemed "domiciled" in its state of incorporation or where it has its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Only in "exceptional case" will a corporation be deemed "at home" for purposes of general jurisdiction anywhere other than its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 139 n.19 (2014).

Subway is not incorporated in California, and its principal place of business is in Connecticut. (*See* Compl. ¶ 5; Mot. 4.) Fishman's allegation that several Subway

fast food restaurants are located in the County of Los Angeles (Compl. ¶ 6) is insufficient to establish that Subway has any systematic or continuous affiliation with California. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) (California court lacked personal jurisdiction over claims by non-California residents against pharmaceutical company despite company's extensive sales, marketing and research in California). Therefore, Subway cannot be considered "at home" in California.

Fishman does not dispute that this court lacks general jurisdiction over Subway. (Reply in support of Mot. ("Reply") 6, ECF No. 31; *see* Opp'n 9–23.) As such, only specific jurisdiction is at issue here.

### ii. Specific Jurisdiction

Specific jurisdiction over a non-resident defendant exists where: (1) the "defendant purposefully direct[s] his activities or consummate[s] some transaction with the forum or resident thereof[,] or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the claim is one that "arises out of or relates to" the defendant's activities in the forum state; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff has the burden of establishing the first two prongs, and only where established does the burden shift to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id*.

**1. Purposeful Availment**

Under the first prong of the three-part test, "purposeful availment" includes both purposeful availment and purposeful direction, which are two distinct concepts. *Id.* Where a case sounds in tort, courts employ the purposeful direction test. Purposeful direction requires the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely

to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802)). The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Morrill*, 873 F.3d at 1143 (citing *Walden v. Fiore*, 571 U.S. 277, 291 (2014)). Courts should consider defendant's contact with the forum state itself, not the person who resides there. *Walden*, 571 U.S. 277, 291.

For jurisdiction to attach on the basis of agency[2], plaintiffs must allege a prima facie case for an agency relationship. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (citing *Daimler*, 571 U.S. at 759 n.13). Specifically, an agent must act on the principal's behalf and be subject to the principal's control. *Id*. Where an agent was authorized to deal on the principal's behalf in California and lease the principal's assets located in California, the principal's conduct was "sufficiently purposeful" to justify California's exercise of specific personal jurisdiction. *Telecom Asset Mgmt., LLC v. FiberLight, LLC*, No. C 14-00728 SI, 2014 WL 12819935, at *6 (N.D. Cal. June 12, 2014) (*aff'd by Telecom Asset Mgmt., LLC v. FiberLight, LLC*, 730 F. App'x 443, 445 (9th Cir. 2018)).

Here, Fishman acknowledges that T-Mobile sent the Text Message and does not allege that Subway itself committed an act aimed at the forum. (Mot. 6; Opp'n 12.) Instead, he argues that Subway availed itself to the forum through T-Mobile, its authorized agent. (Opp'n 12–15.) Fishman premises her specific personal jurisdiction agency argument on allegations that Subway instructed T-Mobile as to the content of and timing of sending the Text Message, and thus, T-Mobile was "acting under the direction and control of Subway." (Compl. ¶¶ 17, 18.) Fishman alleges that Subway

---

[2] The Ninth Circuit has indicated that some standard of agency continues to be "relevant to the existence of specific jurisdiction" though its former standard of whether the subsidiary "performs services that are sufficiently important to the foreign corporation . . ." was deemed invalid by the Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (citing *Daimler*, 571 U.S. at 759 n.13).

engaged in the "mutually beneficial relationship" to sell other items at Subway. (Compl. ¶¶ 14, 15.) Fishman alleges both actual and apparent authority. (Opp'n 13.)

### 1. Actual Authority

Actual authority arises upon "the principal's assent that the agent take action on the principal's behalf." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (citing Restatement (Third) of Agency § 3.01) (indicating that genuine issues of material fact existed as to whether the agent-moderators were granted actual authority when the principal-defendant gave the agent-moderators express directions concerning their role as screeners, including criteria for accepting or rejecting content on the principal-defendant's platform); *Lushe v. Verengo Inc.*, No. CV 13-07632 AB R, 2014 WL 5794627, at *6 (C.D. Cal. Oct. 22, 2014) (in a TCPA matter, finding a triable issue of fact whether an agency relationship existed between the defendants and the contractors where the defendants helped develop the scripts the contractors used, frequently reviewed recordings of the phone calls and instructed the contractors on how their telemarketers could improve, and was aware that at least one contractor was using an automated telephone dialing system).

In *Thomas v. Taco Bell Corp.*, the court found that the plaintiff could not demonstrate an agency relationship between Taco Bell and the entities that sent text messages on behalf of the Chicago Area Taco Bell Local Owners Advertising Association ("Association") as part of an advertising campaign. 879 F.Supp.2d 1079 (C.D. Cal. 2012) *aff'd*, 12–56458, 2014 WL 2959160 (9th Cir. July 2, 2014). The court found that Taco Bell's conduct did not amount to control over the manner and means by which the campaign was executed, noting that Taco Bell did not create or develop the message, and had nothing to do with the decision to use text messages for the campaign. *Id*. at 1085–1086.[3]

---

[3] Concerning the issue of actual authority, the court did not find the following dispositive: that Taco Bell was one of the Association's twelve members, a representative from Taco Bell approved the text message campaign, and Taco Bell's marketing fund at least partially financed the campaign to the issue. *Thomas*, 879 F.Supp.2d at 1081–1083

In contrast, in *Castillo v. Caesars Entertainment Corporation*, the court held that California lacked personal jurisdiction over Caesars despite its possible agency relationship with a California based company that built Caesars's text platform. *Castillo v. Caesars Entm't Corp.*, No. 18-cv-05781-EMC, 2018 WL 6199682, at *1 (N.D. Cal. Nov. 28, 2018). There, the agent set up the platform and Caesars was able to input relevant data and correspond with the plaintiff. *Id*. at *3. The court held that because the role of the agent was attenuated and Caesars sent the text messages in issue, the court could not use the agent's domicile to establish residency over the principal, Caesars. *Id*. at *4.

Here, unlike in *Thomas*, Fishman alleges that Subway instructed T-Mobile as to the content of the Text Message and the timing of when it was sent. In *Thomas*, Taco Bell was one of twelve entities involved in the Association which ultimately approved the message sent by the advertising agency; however, in the instant matter, Fishman alleges Subway controlled T-Mobile and caused it to send the Text Message. Furthermore, unlike in *Castillo*, the role of T-Mobile, the agent, is not attenuated, as T-Mobile sent the Text Message with the approved content to its customer base. Accordingly, the Court distinguishes the present facts from those in *Thomas* and in *Castillo*.

As Fishman alleges that Subway controlled the content and timing of the message, and T-Mobile acted on behalf of Subway, the Court finds that Fishman plausibly pleads an agency relationship between Subway and T-Mobile. Consequently, the Court may premise its personal jurisdiction over Subway on T-Mobile's contact with the forum. *Williams*, 851 F.3d at 1024.

*2. Apparent Authority*

Apparent authority arises by the principal's "manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." *Mavrix*, 873 F.3d at 1055 (citing Restatement (Third)

of Agency § 3.03). "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts . . . under circumstances which create in him a reputation of authority." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969). In *Mavrix*, the Ninth Circuit held that third-party users could reasonably believe the agent-moderators had apparent authority as the agent-moderators themselves "checked and approved" posts the third-party user attempted to upload on principal-defendant's platform. *Mavrix*, 873 F.3d at 1055.

Here, Fishman fails to allege apparent authority. Though Fishman asserts that "any objective recipient of [the Text Message] would reasonably believe that T-Mobile had authority to act for Subway," Fishman fails to allege Subway made any "direct statements" to him indicating its grant of authority to T-Mobile. (Opp'n 13.) Fishman does allege that Subway directed T-Mobile to send him and thousand others the Text Message, however, the Court does not find that one text message with content about a special at Subway for T-Mobile users and a link to the T-Mobile Tuesday program gives rise to "a reputation of authority" to act on behalf of Subway. *See e.g. Thomas*, 879 F.Supp.2d at 1085.

Even assuming an agency relationship exists between Subway and T Mobile, the Court must still determine if T-Mobile's conduct is sufficient to establish personal jurisdiction. Fishman alleges that through its agent T-Mobile, Subway sent the Text Message "en masse to several thousands of wireless telephone numbers nationwide." (Compl. ¶ 13.) In determining whether phone calls or text messages are sufficient contacts with the forum state, district courts have focused on whether the defendant "knew or should have known" that its calls or text messages were sent into California. *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012) ("Where [defendant] knew or should have known that [plaintiff] is a Washington company, [defendant's] intentional acts were expressly aimed at the state of

Washington."); *compare Fabricant v. Fast Advance Funding, LLC*, No. 2:17-cv-05753-AB (JCx), 2018 WL 6920667, at *3 (C.D. Cal. Apr. 26, 2018) (in a TCPA case, finding the plaintiff sufficiently alleged personal jurisdiction where the Defendant made unsolicited phone calls to Plaintiff's cell phone that had a California area code); [and] *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that the defendant expressly aimed its conduct at California where some of the "thousands of unsolicited text messages" to the "general public" were sent to cell phones with California based area codes); *with Abedi v. New Age Med. Clinic PA*, No. 1:17-CV-1618 AWI SKO, 2018 WL 3155618, at *5 (E.D. Cal. June 25, 2018) (in a TCPA case, finding no basis for finding defendant directly targeted California despite the fact plaintiff received the messages in Merced because among other factors the area code of plaintiff's phone number did not correspond to a location within California); [and] *Hastings v. Triumph Prop. Mgmt. Corp.*, 2015 WL 9008758 (S.D. Cal. Dec. 15, 2015) (in a TCPA case, holding that there was no express aiming at California where calls were made to an Arizona area code and no other evidence indicated that the defendant knew that it was calling individuals in California).

Here, Fishman asserts that T-Mobile sent the Text Message to her cellular device with area code "310".[4] (Opp'n 15.) As T-Mobile sent the Text Message to thousands of phone numbers of which at least one had a California area code, the Court can infer from the Complaint that T-Mobile "knew or should have known" that the Text Message was sent to certain phone numbers with California area codes. Accordingly, the Court finds that T-Mobile purposefully directed conduct at California.

---

[4] Fishman states that her cell phone number on which she received the Text Message begins with area code "310". (Malka L. Fishman Decl., ECF No. 22-1.) *Caruth*, 59 F.3d at 128 (finding the plaintiff may use "pleadings and affidavits make a prima facie showing of personal jurisdiction.")

## 2. Claim Arising Out of Action in the Forum

According to the second prong of the three-part test, the claim is one that "arises out of or relates to" the defendant's activities in the forum state. Many courts use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities. In other words, the element is satisfied if plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Subway's contact with the forum, the Text Message, is the basis of the alleged TCPA violation. Thus, the Court finds Fishman sufficiently meets her burden of establishing the first two prongs.

## 3. Reasonableness

Once it has been determined that a defendant purposefully established minimum contacts with a forum, "[the defendant] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. *Dole*, 303 F.3d at 1114 (quoting *Burger King*, 471 U.S. at 477). Courts balance seven factors in determining whether exercising specific jurisdiction would be reasonable: (1) extent of defendant's purposeful interjection into the forum state; (2) burden on defendant in defending the forum; (3) extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) importance of the forum for the plaintiff's interest in convenient and effective relief; (7) the existence of an alternative forum. *Dole*, 303 F.3d at 1114.

As we have already determined that Subway directed its contact to the forum to a degree sufficient to satisfy the purposeful availment requirement, the first factor weighs in favor of exercising specific jurisdiction. Subway alleges that the critical evidence is in Washington, T-Mobile's principal place of business. (Mot. 10.) Thus, the second factor weighs in favor of declining exercise of specific jurisdiction. The Court does not find that third factor pertinent in the instant matter. At least one California resident and phone number in California has been subjected to an alleged

TCPA violation, thus the Court finds that California has an interest in the matter and the fourth factor weighs in favor of exercising specific jurisdiction. In considering the fifth and sixth factors, the Court considers Fishman's residency in California and the Ninth Circuit TCPA doctrine. (Opp'n 18.) Both factors weigh in favor of exercising jurisdiction. Subway alleges that an alternative forum exists but fails to mention where. (Mot. 10.) The Court thus finds the seventh factor weighs in favor of exercising jurisdiction. In balancing the factors, the Court finds Subway failed to demonstrate exercising jurisdiction would be unreasonable or offend traditional notions of fair play and substantial justice. Accordingly, the Court **DENIES** Subway's motion to dismiss for lack of personal jurisdiction.

## B.     Failure to State a Claim

Subway asserts several basis for dismissing claims against it: (1) Subway did not send the Text Message; (2) Fishman fails to sufficiently allege that T-Mobile is an agent of Subway; (3) Fishman fails to sufficiently allege that Subway used an ATDS to send the Text Message; and (4) TCPA's wireless carrier exemption precludes the claim against Subway. (Mot. 2.) The Court addresses each argument in turn.

### a.  Direct Liability

Under the TCPA, it is unlawful "to make any call . . . using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). It is undisputed that a text message constitutes a call for the purposes of this section." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016).

Here, Fishman alleges that Subway sent the Text Message through its agent T-Mobile. (Compl. ¶¶ 13–18.) Thus, the Court finds that Fishman's sole basis for a claim against Subway is through vicarious liability. *See Gomez*, 768 F.3d at 877 (finding that where the party concede that a third party transmitted the disputed messages, it may be vicariously liable for the messages). Accordingly, the Court **GRANTS** the motion as to this basis.

### b. Vicarious Liability

The Supreme Court has held that, when Congress creates a tort action, "it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). As the TCPA is silent as to vicarious liability, the Court incorporates those rules and as such, the conduct of an agent may give rise to a TCPA violation for the principal. *See Gomez*, 768 F.3d at 878 (stating that the conclusion that TCPA imposes vicarious liability is consistent with the statute's implementing agency); *see e.g. Thomas*, 879 F. Supp. 2d at 1084; *Lushe*, 2014 WL 5794627, at *6.

As the Court discusses above, drawing all inferences in favor of Fishman, the Court finds that it is plausible that T-Mobile was an agent for Subway. (Compl. ¶¶ 12–18.) Accordingly, the Court finds that Subway may be vicariously liable for a violation of the TCPA and **DENIES** the motion to dismiss on this ground.

### c. Use of An ATDS

ATDS is defined by the statute as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In recent years, the definition of an ATDS has fluctuated. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045–49 (9th Cir. 2018). Recently, the United States Court of Appeals for the District of Columbia Circuit found the FCC's guidance contradictory and unreasonably expansive, and "vacated the FCC's interpretation of what sort of device qualifie[s] as an ATDS." *Id.* at 1049 (discussing *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)). Accordingly, in *Marks*, the Ninth Circuit "beg[an] anew to consider the definition of ATDS." *Id.* at 1050. The Ninth Circuit concluded that an ATDS is "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Id.* at 1053.

Here, Fishman alleges that "the equipment used to send the [Text Message] has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial telephone numbers stored as a list or in a database without human intervention." (Compl. ¶¶ 19, 20.) Fishman alleges that T-Mobile used short message script messaging technology to transmit thousands of unsolicited messages. (Compl. ¶¶ 13, 16.) As the Court takes allegations in the Complaint as true, Fishman has sufficiently plead the use of an ATDS.

Accordingly, the Court **DENIES** the motion on this basis.

### d. Wireless Carrier Exemption

Subway contends that the TCPA provides a limited exception to wireless carriers to send notice regarding their own services as the statute carves out an exception for transmissions that are free of charge to the consumer. (Mot. 17.) Section (b)(2)(C) indicates that "[t]he Commission . . . may, by rule or order, exempt . . . calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect." 47 U.S.C. § 227(b)(2)(C). In interpreting the TCPA, the Federal Communications Commission states that the TCPA intends to prevent unsolicited advertisements including "calls from phone companies to customers regarding new calling plans." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (stating the interpretation in the report "has the force of law and is therefore entitled to the *Chevron* deference"). Accordingly, the Court finds that T-Mobile's text message advertisement about a special at Subway is not entitled to protection pursuant to the wireless carrier exemption..

Accordingly, the Court **DENIES** the motion to dismiss on this ground.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** the Defendant's Motion to Dismiss (ECF No. 20). The Court **GRANTS** the motion as to the direct liability and **DENIES** the motion as to all other claims.

**IT IS SO ORDERED.**

November 18, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**